# United States Court of Appeals
## For the First Circuit

No. 06-2166

JIAN PAN,

Petitioner,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Selya and Cyr, Senior Circuit Judges.

Sara Sailan Yang and Yang & Sacchetti on brief for petitioner.
Peter D. Kessler, Assistant Attorney General, Civil Division,
Terri J. Scadron, Assistant Director, Office of Immigration
Litigation, and Genevieve Holm, Attorney, Office of Immigration
Litigation, on brief for respondent.

June 7, 2007

**SELYA**, **Senior Circuit Judge**. Claiming to be a religious refugee from his native China, the petitioner, Jian Pan, sought asylum, withholding of removal, or protection under the Convention Against Torture (CAT). An Immigration Judge (IJ), finding that the petitioner's religious persecution claim lacked both credibility and substance, ordered his removal. The Board of Immigration Appeals (BIA) summarily affirmed this ukase. The petitioner now seeks judicial review. We deny the petition.

When and how the petitioner arrived in the United States are hotly contested issues. It is clear, however, that he was here on May 28, 2002, when he initially applied for asylum. He alleged the following facts.

On July 20, 2001, four policemen forcibly entered a private residence in Changle, China, where the petitioner, his father, and other persons were participating in a peaceful Christian "home church" gathering. The officers questioned the petitioner with respect to his membership in the home church and its connection to a "Taiwan anti[-]government group." Fourteen people, including the petitioner and his father, were detained at the local police station. There, the police interrogated the petitioner; angered by his responses one officer slapped his face, kicked him from his stool, and beat him with a baton. On the third of his eleven days in detention, the police handcuffed him to a

pole behind the station house and forced him to stand overnight in the rain. His mother eventually posted bail to secure his release.

The petitioner claims to have fled from China on August 26, 2001, with the assistance of a snakehead (a professional smuggler). He says that he left in the nick of time; shortly after his departure, Chinese authorities consigned both his father and the host of the home church to a labor camp. According to his account, he arrived in the United States on August 28, 2001, and entered illegally.

The next material development occurred nine months later, when the petitioner self-reported to immigration authorities and sought asylum. On August 1, 2002, the former Immigration and Naturalization Service conducted an asylum interview. The interviewer (whom we shall refer to as the asylum officer) found that the petitioner was not credible, that both his chronology of events and his account of what had transpired were flawed, and that he had failed to show that his application for asylum was filed within one year of his arrival in the United States (as required by law). The asylum officer then referred the matter to the Immigration Court for the institution of removal proceedings.

The petitioner, who had traveled to the United States on a fraudulent passport, conceded removability. At the same time, he cross-applied for asylum, withholding of removal, or relief under the CAT. Following a series of evidentiary hearings, the IJ

concluded that the petitioner had failed to carry the devoir of persuasion on any of his three claims for relief. The IJ's conclusion flowed in large measure from an adverse credibility determination. In that regard, the IJ zeroed in on a number of discrepancies in the petitioner's tale.

First, she noted that the petitioner had given conflicting accounts anent a taxi receipt introduced in the hope of showing his presence in China on August 26, 2001 (a date within the one-year eligibility period). Specifically, the petitioner testified before the IJ that he had carried the receipt out of China himself, whereas he had told the asylum officer that his mother had mailed the receipt to him from China some time after his arrival in the United States.

Second, the IJ found that the petitioner's testimony regarding the manner of his entry into and travel about the United States was wildly inconsistent. Before the IJ, the petitioner testified that he flew from Shanghai to Vancouver to Toronto; from there, he took a boat to the New York border. When asked for particulars, he replied that he had traveled by speedboat for five or ten minutes and then by car for approximately six hours to reach New York City's Chinatown district. In his asylum interview, however, the petitioner recounted that he had traveled six hours by boat from Toronto to an island in the middle of a lake and, from there, had traveled six more hours by boat to New York City.

Third, the IJ faulted the petitioner's testimony regarding the medium of travel on the next leg of his sojourn. The petitioner testified before the IJ that he had been driven in a small passenger car by a friend of his snakehead from New York to Los Angeles. This was at odds with what he had told the asylum officer: that he had traveled by truck between those two points.

Fourth, the IJ found that the petitioner's testimony as to how he had come into possession of various documents lacked coherence (and, thus, lacked reliability). The IJ specifically mentioned the petitioner's bank book, his outpatient medical records, and a police summons. The petitioner explained before the IJ that a mysterious individual named "May" — a California resident whose gender is obscure and whom the petitioner could not identify further — had gone to China and brought back the bank book, medical records, and summons at his request. He had told the asylum officer, however, that his mother had mailed those documents to him.

Finally, the IJ found inherently inconsistent the petitioner's accounts of his alleged arrest in China. Relatedly, she noted that the petitioner had failed to offer any corroboration of the claim that he had been arrested.[1] Although careful to note

---

[1]The petitioner did submit two purported bail receipts in an effort to show that his mother had paid to get him and his father released from detention. But these documents were not properly authenticated, see 8 C.F.R. § 287.6(b), and the IJ expressed grave doubt about their provenance. In the circumstances of this case,

that corroborative evidence is not essential to the successful prosecution of an application for asylum, the IJ found this lack of corroboration particularly detrimental to the petitioner's credibility and claim.

Having made an adverse credibility determination, the IJ proceeded to find that the petitioner had not established that his application for asylum was timely. She rejected the asylum claim on that basis. As alternative grounds for her decision, the IJ found that, even assuming the truth of the petitioner's testimony, (i) there was insufficient evidence demonstrating that any persecution on account of a protected ground had occurred and (ii) that the petitioner had failed to show that he had an objectively reasonable fear of future persecution should he be returned to China. In reaching these conclusions, the IJ relied heavily on the State Department's Country Report on Human Rights Practices in China for 2003 (the 2003 Country Report). Pertinently, the IJ noted that, while the petitioner had stated that he did not want to register as a Christian with the Chinese government because of likely repercussions, the 2003 Country Report indicated that Christians returning to China should not be adversely affected by their religious preference.[2]

_____

the IJ was entitled to give them little weight.

[2]Indeed, the 2003 Country Report explained that, in many areas of China, home or family churches were tolerated as long as their membership remained small and their activities discrete.

Consistent with these determinations, the IJ ordered removal and denied the petitioner's cross-application for asylum, withholding of removal, or relief under the CAT. The BIA summarily affirmed. This timely petition for judicial review followed.

Where, as here, the BIA has summarily affirmed an IJ's decision, we review the IJ's decision "as if it were the decision of the BIA." Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005). In this instance, the IJ found that the petitioner had not made an adequate showing of timeliness and, thus, was not eligible for asylum. The petitioner seeks to revisit that determination here.

This effort is unavailing. To qualify for asylum, an alien ordinarily must "demonstrate[] by clear and convincing evidence" that his asylum application was filed within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B).[3] In this case, the petitioner first filed for asylum on May 28, 2002. Thus, he had to prove by clear and convincing evidence that he had first arrived in the United States no earlier than May 29, 2001. The IJ held that the petitioner had failed in this endeavor.

We are bound by that holding. Congress carefully circumscribed the scope of judicial review with respect to

---

[3]An asylum application filed beyond this one-year window may nonetheless be considered if the alien can show changed or extraordinary circumstances. 8 U.S.C. § 1158(a)(2)(D). Because the petitioner has not asserted the existence of changed or extraordinary circumstances sufficient to justify an untimely asylum application, we need not sculpt the contours of this exception.

-7-

timeliness determinations in asylum cases. The relevant statute provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" concerning, inter alia, whether an asylum applicant has complied with the one-year filing deadline. Id. § 1158(a)(3).

This jurisdiction-stripping provision applies foursquare in the case at hand. Citing a dearth of credible evidence, the IJ found that it was at best "unclear" whether the petitioner had filed a timely asylum application. This was merely another way of saying that the petitioner had not clearly and convincingly demonstrated timeliness. Because the IJ found as a matter of fact that the petitioner had failed to prove timeliness and the BIA upheld that finding, we lack jurisdiction to review the petitioner's eligibility for asylum. See id.; see also Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005); Njenga v. Ashcroft, 386 F.3d 335, 339 (1st Cir. 2004).

The petitioner strives to avoid this jurisdictional bar by relying on another statute, which provides that "[n]othing in . . . this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). That reliance is misplaced. To trigger our jurisdiction, the putative constitutional or legal challenge

must be more than a disguised challenge to factual findings.  The underlying constitutional or legal question must be colorable; that is, the argument advanced must, at the very least, have some potential validity.  See Mehilli v. Gonzales, 433 F.3d 86, 93-94 (1st Cir. 2005); Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2001).  Here, the petitioner's claim of legal error is nothing more than a thinly-veiled challenge to the IJ's factfinding and, thus, impuissant as a means of restoring our jurisdiction.  We explain briefly.

The petitioner's "legal error" claim is that the IJ applied an unduly high or strict standard of proof to the timeliness determination.  See Petitioner's Br. at 6.  That claim is entirely conclusory; there is no sign that the IJ applied the wrong standard.

We add, moreover, that section 1158(a)(2)(B) requires that an alien demonstrate "by clear and convincing evidence" that his application for asylum was filed within the one-year window. It follows that the burden of proof for satisfying the temporal element of an asylum application is considerably "higher" or "stricter" than that required for satisfying the substantive elements of an asylum application.[4]  Thus, to say without

---

[4]To make out the substantive elements of such a claim, an alien need only show a reasonable possibility that, if removed to his homeland, he will be persecuted on account of a protected ground.  See INS v. Cardoza-Fonseca, 480 U.S. 421, 440 (1987); Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999).

elaboration (as does the petitioner) that the IJ applied an unusually high or strict standard of proof on timeliness amounts to nothing more than saying that the IJ honored the command of the controlling statute. Seen in this light, the petitioner's claim of legal error is obviously incorrect and, thus, not colorable.

Of course, there is another way to look at the petitioner's claim; he may be saying, on the bottom line, that the IJ simply got the facts wrong. If this is so, the claim is no more than a factual claim masquerading as a legal challenge. If the cynical use of that sort of costumery could defeat the operation of the jurisdiction-stripping provision, then the provision would be rendered meaningless. We refuse to go down so wayward a path.[5] Accord Arias v. U.S. Att'y Gen., 482 F.3d 1281, 1284 (11th Cir. 2007); De Araujo v. Gonzales, 457 F.3d 146, 154 (1st Cir. 2006); Mehilli, 433 F.3d at 94.

The short of it is that the petitioner has put forth no colorable legal claim vis-à-vis the IJ's timeliness determination. Consequently, we lack jurisdiction to review the denial of the petitioner's asylum claim. See 8 U.S.C. § 1158(a)(3).

_____

[5]To the extent that the petitioner asserts that the record shows clearly and convincingly that he timely filed his asylum application, that assertion is subject to the same infirmity. The assertion is a factual one: refined to bare essence, it asks us to consider whether the IJ's contrary determination is supported by the evidence.

This is not the end of the matter because there are no similar temporal or jurisdictional barriers to judicial review of the denial of the petitioner's other claims for relief. We turn, then, to his withholding of removal claim.

The IJ did not deal specifically with this claim. Withal, the asylum and withholding of removal analyses are sufficiently analogous that we may treat the IJ's findings of raw fact on the asylum claim as transferable in large part to the withholding of removal claim. Cf. Wine & Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1, 7 (1st Cir. 2007) (acknowledging that "a trial court's findings of fact, made in connection with one legal theory, may often be treated as fungible in connection with another").

We review findings of fact in immigration proceedings only to determine whether those findings are supported by substantial evidence in the record. Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005). In other words, we accept an IJ's findings of fact, including credibility determinations, as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). We will embrace a finding unless the evidence "points unerringly in the opposite direction." Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004). Rulings of law engender de novo review, but with some deference to

-11-

the agency's reasonable interpretation of statutes and regulations that fall within its purview.  See Bocova, 412 F.3d at 262; see also Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984).

To qualify for withholding of removal, an alien must show that, more likely than not, he faces persecution on account of one of five protected grounds, namely, race, religion, nationality, membership in a particular social group, or political opinion, should he return to his homeland.  See 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 208.16(b)(2); see also Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).  This "more likely than not" standard is harder for an alien to satisfy than the "reasonable possibility" standard for showing a well-founded fear of future persecution in asylum cases.  See INS v. Stevic, 467 U.S. 407, 429-30 (1984); Makhoul v. Ashcroft, 387 F.3d 75, 82 (1st Cir. 2004).

An alien's credible testimony, standing alone, may sustain his burden of proving eligibility for withholding of removal.  See Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004).  But evidence that the factfinder supportably characterizes as incredible may be either disregarded or discounted.  See Laurent, 359 F.3d at 64.  Accordingly, an adverse credibility determination can prove fatal to a claim for either asylum or withholding of removal.  See, e.g., Stroni v. Gonzales, 454 F.3d

-12-

82, 89 (1st Cir. 2006); <u>Nikilujuw</u> v. <u>Gonzales</u>, 427 F.3d 115, 121 (1st Cir. 2005).

This is such a case. In itself, the IJ's adverse credibility determination suffices to defeat the withholding of removal claim.

Faced with that reality, the petitioner exhorts us to set aside that determination. He argues that an adverse credibility determination cannot rest on trivia but, rather, must rest on discrepancies that involve matters of consequence. <u>See</u> <u>Mewengkang</u> v. <u>Gonzales</u>, ___ F.3d ___, ___ (1st Cir. 2007) [No. 06-1976, slip op. at 4-5]; <u>Bojorques-Villanueva</u> v. <u>INS</u>, 194 F.3d 14, 16 (1st Cir. 1999). The petitioner's premise is sound but the conclusion that he seeks to have us draw from it does not follow.

We have outlined the anatomy of the IJ's adverse credibility determination earlier in this opinion. The IJ did not deal in broad generalizations but relied on a specific and well-articulated litany of identified inconsistencies in the petitioner's story. Those inconsistencies involve matters important to the petitioner's claims for relief, such as the circumstances of his alleged detention, when he was last in China, and the date and manner of his arrival in the United States. The petitioner provided conflicting accounts of his journey to the United States; he failed to describe consistently the mode and manner of his cross-country trip from New York to Los Angeles; and

-13-

he told different stories at different times about the origins of the various documents that he introduced during the hearings. What is more, a letter from the petitioner's father undermined the petitioner's claim that his father had been hauled away to a labor camp.

Some of these inconsistencies, in isolation, may seem like small potatoes. What counts, however, is that their cumulative effect is great. Cf. Bourjaily v. United States, 483 U.S. 171, 179-80 (1987) (acknowledging that the "sum of an evidentiary presentation may well be greater than its constituent parts").

The petitioner also notes that several of the inconsistencies mentioned by the IJ arise by comparison of the petitioner's statements at the hearings to his (quite different) statements to the asylum officer. Before the IJ, the petitioner sought to minimize these discrepancies by claiming, in effect, that the asylum officer got it wrong. Any argument that the IJ erred in rejecting that claim is hopeless; the report of the asylum interview enjoys a presumption of regularity, and the IJ was entitled to treat that report as accurate. See Abdulai v. Ashcroft, 239 F.3d 542, 550 (3d Cir. 2001).

To continue in this vein would serve no useful purpose. We conclude, without serious question, that the adverse credibility determination is supported by substantial evidence in the record.

-14-

The petitioner next suggests that other evidence in the record, not affected by the adverse credibility determination, compels a conclusion that his fear of religious persecution is well-founded. That suggestion lacks merit. The record, shorn of the petitioner's testimony, cannot carry the weight that the petitioner seeks to load upon it.

The petitioner's main argument in this regard is that the IJ erred in failing to consider some documents and in misreading others. This argument is jejune. Although an IJ may not simply ignore substantial testimonial and documentary proof, she need not discuss ad nauseum every piece of evidence. See Mihaylov v. Ashcroft, 379 F.3d 15, 22 (1st Cir. 2004). So long as the IJ has given reasoned consideration to the evidence as a whole, made supportable findings, and adequately explained her reasoning, no more is exigible. See Martinez v. INS, 970 F.2d 973, 975 (1st Cir. 1992).[6]

The petitioner also asseverates that the 2003 Country Report describes his native province as particularly intolerant of home churches. To the extent that it is true, this asseveration

_____

[6]The petitioner complains with especial acrimony about the IJ's reliance on an unfavorable passage contained in the 2003 Country Report. In the petitioner's view, the IJ should have emphasized instead a more favorable passage. In such matters, however, we defer to the factfinder's reasonable choices from conflicting evidence. See Martinez, 970 F.2d at 975; cf. United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990) (stating that the factfinder's choice among plausible but conflicting inferences cannot be clearly erroneous).

misses the mark. Withholding of removal is not in order when a refugee may safely relocate within his native land. <u>See</u>, <u>e.g.</u>, <u>Da Silva</u>, 394 F.3d at 7; <u>see</u> <u>also</u> 8 C.F.R. § 208.16(b)(2). There is no requirement that he be able to relocate to a particular province or village.

This leaves only the petitioner's claim under the CAT. That claim need not detain us because the petitioner has made no reasoned argument to support it. We long have held that legal theories advanced in skeletal form, unaccompanied by some developed argumentation, are deemed abandoned. <u>See</u>, <u>e.g.</u>, <u>Jiang</u> v. <u>Gonzales</u>, 474 F.3d 25, 32 (1st Cir. 2007); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). So it is here.

We summarize succinctly. In the circumstances of this case, we lack jurisdiction to review the rejection of the petitioner's asylum claim. The denial of the petitioner's claim for withholding of removal is supported by substantial evidence in the record. Last — and in this instance least — the petitioner's CAT claim has been abandoned. We need go no further.

**<u>The petition for judicial review is denied</u>**.