# United States Court of Appeals

## For the First Circuit

No. 07-1599

MOHAMMAD JAMAL,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Boudin, Circuit Judge,

Campbell and Stahl, Senior Circuit Judges.

Peter A. Allen for petitioner.
Jesse M. Bless, Attorney, Office of Immigration Litigation,
United States Department of Justice, Peter D. Keisler, Assistant
Attorney General, Civil Division, and David V. Bernal, Assistant
Director, on brief for respondent.

June 27, 2008

**CAMPBELL**, <u>Senior Circuit Judge</u>.    Petitioner Mohammad Jamal, a native and citizen of Pakistan, seeks review of a March 19, 2007 decision by the Board of Immigration Appeals ("Board" or "BIA") affirming an immigration judge's denial of his application for asylum and withholding of removal under sections 208 and 241(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231(b)(3) and protection under the Convention Against Torture ("CAT"), 1465 U.N.T.S.; <u>see</u> <u>also</u> 8 C.F.R. § 208.18 (2006) (implementing the convention).    Jamal argues that his right to due process was violated by the IJ's conclusion that his asylum petition was untimely filed, and he challenges the IJ's conclusion that he was not subjected to past persecution and would not be likely to suffer future persecution.    We deny the petition.

## Facts

Jamal entered the United States on July 30, 2000.    On March 21, 2003, the Department of Homeland Security ("DHS") charged Jamal with removability because he had stayed in the United States without authorization.    Jamal conceded his removability but applied for asylum, withholding of removal, and protection under the CAT. The IJ denied his applications on August 9, 2005, and the Board affirmed that decision on March 19, 2007.

The following facts were developed at the IJ's hearing held on August 9, 2005.    Jamal joined the Pakistani Muslim League-Nawaz ("PML-N"), a political party which supported a movement

-2-

toward democracy, in 1973. In 1998, according to Jamal, he was named secretary general of his village. As secretary-general, he held meetings, talked with party members, and recruited others to join the PML-N. For nine months of each year from 1973-2000, Jamal worked as a seaman. When not at sea, he worked as a farmer and agriculturist. In October 1999, Pakistan's President Nawaz Sharif, who was also the leader of the PML-N, removed the chief of the army, General Pervez Musharraf. Musharraf retaliated by fomenting a successful military coup against Sharif and his cabinet.

On November 16, 1999, Jamal participated in a meeting advocating democracy and criticizing Musharraf's new military regime. During the meeting, the police beat Jamal and others present. Jamal testified that he sustained injuries to his hands, back and feet but said nothing about injury to his abdominal organs. Jamal said he sought medical treatment, and a doctor's letter he submitted said he had sustained "blunt injuries to his abdominal organs" and described his condition as "pretty serious." When asked during the hearing whether he had suffered blunt abdominal injuries, as the letter said, Jamal responded, "When you are beaten with, with sticks and rock, surely you're going to get injuries inside your system." The IJ observed that the doctor's letter was dated October 29, 1999, several days before the meeting when Jamal was supposed to have sustained the injuries. Jamal testified that the date of the letter was an error. The IJ further

observed that "the respondent does not appear to have suffered blunt injuries to his abdominal organs."

At the hearing, Jamal submitted a document, translated from Urdu into English, entitled "First Investigation Report," that appeared to be a local police report dated November 16, 1999 accusing Jamal and others of disturbing the peace and stating that Jamal and the others were fighting hand to hand with police.

Jamal asserted that after November 16, he resumed participation in political activities and suffered other beatings by the police. In all, he said that he suffered between five and ten beatings between November 16, 1999 and November 30, 1999, when he left the area. He did not, however, claim to have sustained injuries subsequent to the beating on November 16; he testified as to the latter incidents, "No, no, not really injuries." After leaving the area on November 30 to go to Karachi, Jamal suffered no further harm. In December of 1999, Jamal returned to his work as a seaman and traveled out of Pakistan with government-issued documentation. There was no evidence of his conviction of any criminal offense, of the issuance of a warrant for his arrest, or of any specific threat by authorities to his safety should he return to Pakistan.

The 2001 State Department Country Conditions report submitted by Jamal's counsel to the IJ stated there were significant amounts of corruption and sectarian violence in

Pakistan and that the government's human rights record was poor. The 2001 report also observed that while the government permitted all existing political parties to function, including the PML-N, the government had essentially prevented the PML-N from electing former President Sharif.

The country conditions report stated that on April 6, 2000, former President Sharif was convicted of hijacking and terrorism because he had in 1999 refused to permit a commercial flight on which Musharraf was a passenger to land in Karachi. On December 10, 2000, Musharraf pardoned the former president, who flew to exile in Saudi Arabia and promised to stay out of politics for two decades. After the coup, the PML-N chose not to call for the restoration of the Sharif government because it believed it would be a mistake to challenge the military directly.

After taking over, Musharraf consolidated a number of governmental roles and assumed more power for himself. His actions included suspending the constitution, jailing several justices and lawyers of the supreme court, and shutting down independent television stations.[1]

---

[1]While we look solely to facts in the record in determining whether to sustain the decision below, we take note that history has not stood still since this matter was decided. Press reports indicate that former Prime Minister and leader of the opposition Pakistan People's Party ("PPP") Benazir Bhutto was assassinated as she campaigned in anticipation of January 2008 parliamentary elections. When elections were finally held, both the PPP and the PML-N won the majority of seats in the Parliament and formed an alliance. Musharraf, who remains the president of Pakistan but is

Jamal testified to the IJ that if he returned to the area of his home, he would be beaten by the local police. He also submitted an affidavit asserting that "the leaders of these extremist organizations know me and would kill me if I returned to Pakistan." Since Jamal entered the United States, however, his wife and six children have continued to live without incident in Pakistan. There is no independent evidence of anyone looking for Jamal or threatening to hurt him if he returns home, nor is there evidence of such conduct by the authorities relative to other PML-N adherents because of their opposition to the coup against Sharif.

### IJ's Decision and Board Appeal

In denying Jamal's applications for asylum, the IJ concluded that Jamal was statutorily ineligible for asylum because he had neither filed his application for asylum within one year of his arrival in the United States nor shown the existence of changed or extraordinary circumstances sufficient to justify the lateness of his application. The uncontested record evidence shows that Jamal arrived in the United States on July 30, 2000 and sought asylum only on January 5, 2004, some three and a half years later. The IJ rejected Jamal's contention that his illiteracy and asserted ignorance of the availability of asylum were exceptional circumstances justifying the lateness of his application. She also

no longer the chief of the military, has said he would work with the new Parliament. Sharif has returned to the country and is expected to run for Parliament in June of this year.

-6-

rejected any contention that the country conditions had changed in a way that materially affected his reasons to fear harm upon his return.

In evaluating Jamal's claims for withholding of removal and protection under the CAT, the IJ concluded that Jamal's contention that he was beaten by police for political reasons at and after the meeting on November 16, 1999 was insufficient evidence to establish past persecution. While the IJ found Jamal's narrative of the November 16 beating was credible, and that the harm he then suffered was "inflicted on account of his political opinion and his political activities," she observed that Jamal had been physically able to return to his political activities immediately and had joined in other protests without additional injuries. She further observed that the date of the doctor's note, some days before the claimed beating, and the apparent lack of blunt abdominal injury suffered by Jamal, also raised a question as to the injuries inflicted. The IJ noted that the purported translation of a document naming Jamal as fighting with police and disturbing the peace on November 16, 1999 was unsigned by another except the notary and was unaccompanied by the original. The IJ found that it did not result in a warrant for Jamal's arrest and did not interfere with his ability to travel or to leave the country.

The IJ additionally concluded that despite the violence in Pakistan, Jamal had failed to establish that he would more likely than not be persecuted on his return to the country because of his prior opposition to the coup against Sharif. The IJ based this decision on the facts that Jamal's wife and children were still living unharmed in Pakistan, that Jamal did not claim that anyone had threatened him or looked for him since he left Pakistan, and that he did not show that any supporter of Sharif had been harmed since 2000. She concluded there was no evidence that the uncertain conditions in Pakistan would affect Jamal any more than any other citizens of Pakistan. The IJ denied Jamal's applications for withholding of removal and protection under the CAT.

The BIA dismissed Jamal's appeal of the IJ's decision on March 19, 2007, affirming both her conclusion that Jamal had filed an untimely application for asylum not subject to any of the exceptions and that he had not established past persecution or likelihood of future persecution or of torture.

## Discussion

We turn to Jamal's arguments that the BIA violated his right to constitutional due process of law by upholding the IJ's conclusion that his asylum application was time-barred, and also to his challenges to the IJ's conclusion that he failed to establish past persecution or threat of future persecution or torture.

I.  Timeliness

Under INA § 208(a)(3), 8 U.S.C. § 1158(a)(3),[2] courts are denied jurisdiction to review the Attorney General's determination that an alien has filed an untimely petition and has not established changed or extraordinary circumstances to excuse the late filing.  See Heng v. Gonzales, 493 F.3d 36, 47 (1st Cir.

_____

[2]The statute reads, in relevant part:

(a)  Authority to apply for asylum
     (1)  In general
     Any alien who is physically present in the United States or who arrives in the United States . . . may apply for asylum in accordance with this section . . . .
     (2)  Exceptions
     . . .
         (B)  Time limit
         Subject to subparagraph (D), paragraph (1) shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States.
         . . .
         (D)  Changed circumstances
         An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (c), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).
         . . .
     (3)  Limitation on judicial review
     No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).

8 U.S.C. § 1158(a).

2007); Pan v. Gonzales, 489 F.3d 80, 84-85 (1st Cir. 2007) (holding no jurisdiction to review a timeliness determination for asylum).

Jamal does not dispute that his petition was, in fact, untimely filed but challenges on purported constitutional grounds the IJ's factual finding that he did not demonstrate changed or extraordinary circumstances sufficient to warrant an exception to the one-year rule. He argues in his brief that "the failure of the IJ to make an individualized analysis in order to determine whether evidence exists in the record sufficient to qualify the Petitioner for an exception from the (one) 1-year asylum ban on the basis of changed circumstances or extraordinary circumstances . . . was a violation of due process . . . ."

On the record before us, this claim of unconstitutionality is frivolous. "To trigger our jurisdiction, the putative constitutional or legal challenge must be more than a disguised challenge to factual findings." Pan, 489 F.3d at 84. The IJ acted reasonably in giving little credence to Jamal's contention that, having overstayed his visa, he had justifiably remained unaware for over three years from the time he arrived in the United States of the one-year period within which to file for asylum. She noted the existence of various legal aid sources where advice was available and found that, "although not being able to read or write, [he] is [an] otherwise seemingly intelligent, oriented, and sane individual. Therefore, I find that the mere

inability to read or write does not, under these circumstances, cause the Court to conclude that the respondent is suffering from a disability."  Finally, she concluded that "the Court does not believe that country conditions have changed since the respondent's arrival in the United States so as to materially affect his reasons for fearing harm."  Nothing about these findings suggests that Jamal's right to constitutional due process was infringed.  We accordingly lack jurisdiction to review the BIA's decision affirming the IJ's conclusion that Jamal's asylum petition was untimely and that he has not demonstrated changed or extraordinary circumstances excusing his delay.

II.  Denial of Claim for Withholding of Removal and Protection Under the CAT

An alien scheduled for deportation may avoid removal if the Attorney General concludes that "the alien's life or freedom would be threatened in [the destination] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  Jamal challenges the IJ's findings of fact that he established neither past persecution nor threat of future persecution should he be returned to Pakistan and also was not eligible for withholding of removal and protection under the CAT.

If the Attorney General concludes that the alien was a victim of past persecution, there is a presumption of future persecution should the alien be returned to the country.  8 C.F.R.

§ 1208.16(b)(1)(i). But an alien who has not demonstrated past persecution must demonstrate that it is more likely than not that he will be subject to future persecution upon returning to the country. 8 C.F.R. § 1208.16(b)(2). Under the CAT, an alien may not be returned to his country if "there are substantial grounds for believing [he] would be in danger of being subjected to torture." Pub. L. No. 104-277, § 2242, 112 Stat. 2681, 2681-822 (1998). The alien must show that he will more likely than not be tortured upon returning to his country. Ang v. Gonzales, 430 F.3d 50, 55, 58 (1st Cir. 2005).

As the BIA affirmed the basis of the IJ's decision, we review both the IJ and the BIA's decisions. Butt v. Keisler, 506 F.3d 86, 89 (1st Cir. 2007). Their conclusions "must be upheld if supported by reasonable, substantial and probative evidence on the record considered as a whole." INS v. Elias-Zacharias, 502 U.S. 478, 481 (1992) (internal quotation omitted). Our review is deferential. Their findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B). Jamal must demonstrate the evidence in the record not only supports a contrary conclusion but compels it. Da Silva v. Ashcroft, 394 F.3d 1, 4-5 (1st Cir. 2005). He has not done so here.[3]

---

[3]The government argues that Jamal's argument regarding past persecution and likelihood of future persecution has been abandoned because they have been "advanced in skeletal form, unaccompanied by

a. Past Persecution

In rejecting Jamal's claim of past persecution, and its accompanying presumption of future persecution should he return to Pakistan, the IJ concluded that the evidence of police beatings in November of 1999 following the military coup did not rise to the level of persecution.

The only claimed actual injury to Jamal related to his beating at the November 16, 1999 meeting. He walked home afterwards, and engaged in further political activism throughout the remainder of the month which, he said, resulted in further police beatings, although without injury to himself. He then went to Karachi without apparent problems and later resumed his work as a seaman, during which time he traveled freely out of Pakistan using government-issued documents.

The IJ credited Jamal's testimony as to the November 16, 1999 police beating although, because of the earlier date of the doctor's report, the discrepancy between Jamal's description of his injuries and those in the report, and Jamal's ability to walk home and resume demonstrating thereafter, she found he exaggerated his injuries. And while Jamal presented what appeared to be a translation of a local police report verifying his encounter with police on November 16, 1999, he presented no evidence he was

some developed argumentation." Pan, 489 F.3d at 87. Though there is force to this argument, we conclude, in any event, that Jamal's contentions are without substance.

-13-

convicted for his part in the November 16 disturbances, nor that a warrant for his arrest was issued. Nor was there evidence that others who had engaged in activism similar to Jamal's were detained or harmed thereafter by the police. His wife and children have continued to live in Pakistan without being disturbed by the authorities. There was evidence that, in general, while the police at this time used force against demonstrators and sometimes arrested them, the government usually allowed individuals to assemble peacefully subject to some restrictions.

We cannot say that this record compelled the IJ to find that Jamal was subjected to past persecution. The described events occurring in November of 1999 could reasonably be categorized as being more in the nature of isolated occurrences than the sort of systematic threats to Jamal's life or freedom indicative of his having been persecuted by the authorities. See Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005) (distinguishing between "systematic maltreatment that rose to the level of past persecution" as opposed to a series of "isolated incidents," and sustaining a finding of no past persecution where petitioner was beaten seven times by the police but did not need medical attention and was able to live in peace for three years following his last arrest); Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005) ("[M]istreatment ordinarily must entail more than sporadic abuse in order to constitute persecution," and upholding a finding of no

-14-

persecution after two widely-separated beatings); <u>Nelson</u> v. <u>INS</u>, 232 F.3d 258, 263 (1st Cir. 2000) (three episodes of solitary confinement of less than 72 hours accompanied by physical abuse held insufficient to require a finding of persecution).  Given especially the deferential standard governing this court's review of the IJ's and BIA's determinations of persecution, <u>see, e.g.</u>, <u>Bocova</u>, 412 F.3d at 263 ("Persecution is a protean word of many meanings," definition of which is in the first instance the prerogative of the Attorney General), we are unable to say that a contrary finding as to past persecution was required here.

b.  Likelihood of Future Persecution or Torture

The IJ concluded that Jamal was not likely to be subjected to future persecution or torture, noting that his wife and six children still live safely in Pakistan and that despite the corruption and political turmoil in the country, "there is just simply no evidence that those conditions would affect the respondent more than other citizens of Pakistan."  Jamal testified that his wife and children "don't have any problems."  "Without some explanation, the fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return."  <u>Aguilar-Solis</u> v. <u>INS</u>, 168 F.3d 565, 573 (1st Cir. 1999).  Though Jamal expressed concern that "the leaders of these extremist organizations know me and would kill me if I returned to Pakistan," he did not provide evidence beyond his

personal expression of these concerns and fears to support this allegation. His family's ongoing safe residence in the country, as well as his own earlier unobstructed passages when traveling to Karachi and as a seaman, as well as the absence of any outstanding relevant threats, belie this claim.

This court has said that the prospect "that a country's politics remain volatile, leaving open the possibility of deterioration and including some measure of specific violence, does not necessarily establish an alien's well founded fear of persecution should he be returned to that country." Chreng v. Gonzales, 471 F.3d 14, 23 n.3 (1st Cir. 2006). Without evidence of a specific threat or of an ongoing pattern of persecution against similarly situated members of his party, Jamal has not shown the record compels the conclusion that he is likely to be persecuted or tortured upon returning to Pakistan.

**Petition denied**.