# United States Court of Appeals
## For the First Circuit

No. 08-1586

TAMARA TASYA; MARKUS SUBROTO,

Petitioners,

v.

ERIC H. HOLDER, JR., Attorney General

Respondent.

ON PETITION FOR REVIEW OF ORDERS AND DECISIONS
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lipez and Howard, Circuit Judges,
and Woodcock,[*] District Judge.

William A. Hahn and Hahn & Matkov for petitioners.
Michael F. Hertz, Acting Assistant Attorney General, Civil
Division, Cindy S. Ferrier, Senior Litigation Counsel and Sunah
Lee, Trial Attorney, Office of Immigration Litigation, United
States Department of Justice, on brief for respondent.

July 23, 2009

---

[*]Of the District of Maine, sitting by designation.

**HOWARD**, **Circuit Judge**. The petitioners, Tamara Tasya ("Tasya") and her husband Markus Subroto ("Subroto"), natives and citizens of Indonesia, seek review of a final order of the Board of Immigration Appeals ("BIA"). The BIA upheld the Immigration Judge's ("IJ") denial of Tasya's request for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The petitioners contest the adequacy of the BIA's decision, arguing that it was insufficiently reasoned. We deny the petition.

## I. Facts

Tasya and Subroto entered the United States in March 2001 as nonimmigrant visitors. Both overstayed their visas. Before being placed in removal proceedings, Tasya applied for asylum and withholding of removal, listing Subroto as a beneficiary in her application. An asylum officer concluded that she had failed to establish past persecution or a well-founded fear of future persecution. Tasya and Subroto were subsequently placed in removal proceedings and again requested asylum and withholding of removal, as well as CAT protection.

In support of these requests, the petitioners claimed that they suffered persecution in Indonesia because they are Chinese Christians. Before the IJ, they testified to incidents occurring over the course of several years; each incident involved

-2-

Tasya and one also involved Subroto. Their testimony may be briefly summarized.

Tasya's elementary schoolmates in Indonesia were primarily Muslims of Indonesian ethnicity. Despite outperforming those students, she received lower grades because she was Chinese and Christian. Later, during junior high school, two ethnic Indonesians mugged her, pulling a gold necklace off of her neck. Also during this time, an operator ordered her off of public transportation, forcing her to turn over all her money in the process.

Years later in 1998, while she was traveling on a motorbike, Tasya was chased by four ethnic Indonesians who were also on motorbikes. She eventually fell off her motorbike and suffered an injury to her left leg. The assailants taunted her, saying "you Chinese, I wish you were dead, I wish you [would] disappear." The injury left scars on her leg. Tasya testified that ethnic Chinese were being persecuted in Indonesia during that time period. Specifically, houses, buildings, and shops belonging to Chinese were burned and Chinese women were raped.

In 2001, Tasya and Subroto were confronted by a group of Muslims while the couple were returning home from church. Subroto's wallet, watch and ring were taken, and perhaps Tasya's necklace as well. When Subroto tried to defend himself and his wife, one of the assailants punched him in the face; as a result,

his jaw does not function normally. Tasya was carrying a Bible during the attack, and both testified that they were attacked because they were Chinese Christians. When they reported this incident to the police, the police asked for money and otherwise refused to act.

Tasya and Subroto asserted that they each held a fear of future persecution, based both on alleged past persecution and on the generally unfavorable climate toward Chinese Christians in Indonesia.

The IJ denied their claims for asylum, withholding of removal, and protection under the CAT. The IJ determined that the petitioners lacked credibility with respect to some of their testimony, and also ruled that, in any event, the abuse described by them did not amount to persecution. In particular, the IJ noted that the early incidents described by Tasya constituted harassment but not persecution, and that the two incidents of physical abuse -- the motorbike incident and the confrontation after church -- did not rise to the level of persecution, either. Additionally, the IJ found that the petitioners had failed to sufficiently show that the claimed persecution was connected to their ethnicity or religion. Finally, the IJ ruled that the petitioners had failed to establish that their asserted fear of future persecution was well-founded. The IJ observed that Tasya's parents and children remained uneventfully in Indonesia, and found that the evidence of country

conditions did not indicate that the Indonesian government officially promoted racial or ethnic intolerance.

In affirming, the BIA agreed that the petitioners had not proved past persecution or established a well-founded fear of future persecution. In its decision, the BIA included a terse assessment of the testimony, discussed the U.S. Department of State's Country Reports for Indonesia for 2005 and cited the U.S. Department of State's International Religious Freedom Report for Indonesia for 2005. It closed by expressing that it had considered all of the record evidence in reaching its decision.

## II. Discussion

The petitioners' challenge is limited to the denial of asylum, and they claim only that the BIA's decision does not provide an adequate basis for appellate review of the asylum denial. They request a remand for another hearing "in conformance with the applicable standards." See Halo v. Gonzales, 419 F.3d 15, 18 (1st Cir. 2005) ("We may remand . . . if the BIA's opinion fails to 'state with sufficient particularity and clarity the reasons for denial of asylum.'" (quoting Gailius v. INS, 147 F.3d 34, 46 (1st Cir. 1998))).

To obtain asylum, an alien must demonstrate a well-founded fear of future persecution based on race, religion, nationality, membership in a particular social group or political opinion. See 8 U.S.C. § 1101(a)(42)(A); Zarouite v. Gonzales, 424

-5-

F.3d 60, 63 (1st Cir. 2005). "An alien who demonstrates past persecution is presumed, subject to rebuttal, to have a well-founded fear of future persecution."[1] Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009) (citing 8 C.F.R. § 1208.13(b). Even without proving past persecution, an alien may still qualify for asylum by establishing a fear of future persecution that is subjectively genuine and objectively reasonable. Santosa v. Mukasey, 528 F.3d 88, 93 (1st Cir. 2008) (citation omitted).

The petitioners argue that the BIA's treatment of their past persecution claims was overly summary, and they focus on the BIA's purported failure to discuss the physical injuries they suffered. In its sparse discussion of the alleged past persecution, the BIA stated that:

> The incidents described by the respondents - including incidents of harassment in school, the female respondent being knocked off of her motorcycle and injured, and the respondents being stopped and robbed while riding a motorcycle together - are insufficient to constitute past persecution.

---

[1]The petitioners' reply brief points out that the government identifies an applicant's burden in proving past persecution as providing "conclusive evidence." See Romilus v. Ashcroft, 385 F.3d 1, 6 (1st Cir. 2004) (citing Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003)). Any loose language in Romilus notwithstanding, Romilus and Albathani were concerned not with the burden of proof before an IJ but rather with a petitioner's burden on judicial review, accurately stated as "the [BIA's] decision can be reversed only if the evidence presented by [the petitioner] was so conclusive that any reasonable adjudicator would be compelled to conclude the contrary." Velasquez v. Ashcroft, 342 F.3d 55, 58 (1st Cir. 2003) (emphasis in original); see also 8 U.S.C. § 1252(b)(4)(B) (2000).

This conclusion echoed that reached by the IJ. "As the BIA affirmed the basis of the IJ's decision, we review both the IJ and the BIA's decisions." Jamal v. Mukasey, 531 F.3d 60, 66 (1st Cir. 2008) (citation omitted); see also Enwonwu v. Gonzales, 438 F.3d 22, 35 (1st Cir. 2006).

The petitioners contend, however, that this is not an appropriate case in which to look to the IJ's decision, because the IJ's analysis was tainted by his conclusion that the petitioners were not credible witnesses. On the contrary, the IJ explicitly held that, even crediting the petitioners' testimony, the events they testified about did not amount to persecution. Such alternative analyses are acceptable, see Li Hua Zheng v. Gonzales, 416 F.3d 97, 100 (1st Cir. 2005), and the petitioners do not cite any authority suggesting otherwise. Beyond stating that the IJ's opinion was infected by his adverse credibility determination, the petitioners do not seriously challenge his conclusion that the incidents did not rise to the level of persecution. The BIA's brevis treatment of the petitioners' claims of past persecution, when read in conjunction with the IJ's decision, is adequate.

The petitioners also argue that the BIA's decision reflects an inadequate consideration of the country conditions evidence. They assert that the BIA failed to consider their claims, especially their claims of past persecution, in the context of the country condition reports. Moreover, they argue, the BIA

ignored portions of the country reports that were favorable to them.

The petitioners' view of the BIA's decision is overly narrow. After analyzing the petitioners' asylum claims, the BIA stated that it had considered all of the record evidence in reaching its decision. Moreover, the BIA's decision specifically explicated the country conditions evidence in commenting on whether either petitioner held a well-founded fear of future persecution. In context, the fact that the BIA did not engage in a repetitive recounting of country conditions is hardly suggestive that the Board was either unaware of or ignored the acknowledged country conditions information when considering the petitioners' past persecution claims.[2]

---

[2]The petitioners have sought to file a supplemental brief addressing a recent case from another circuit, Wakkary v. Holder, 558 F.3d 1049, 1064 (9th Cir. 2009). The proper course would have been to bring that authority to the attention of the court through a submission compliant with Fed. R. App. P. 28(j). Treating the filing as a Rule 28(j) letter, we note that Wakkary deals with the role of "disfavored group" analysis in assessing persecution claims, an issue on which the binding precedent in this circuit is Kho v. Keisler, 505 F.3d 50 (1st Cir. 2007). The petitioners' opening brief makes no mention of Kho, and we decline to consider their newly minted argument. We also observe in passing that, to the extent that Wakkary's disfavored group analysis counsels a contextual approach in assessing persecution claims, we have repeatedly said that such claims are to be examined in the context of the country condition reports. Budiono v. Mukasey, 548 F.3d 44, 49 (1st Cir. 2008); see also El Moraghy v. Ashcroft, 331 F.3d 195, 205 (1st Cir. 2003); Cordero-Trejo v. INS, 40 F.3d 482, 491 (1st Cir. 1994).

Finally, the petitioners also claim that the BIA ignored parts of the country reports that were favorable to them. That claim is belied by the record. In reaching its decision, the BIA acknowledged that the U.S. Department of State's Country Reports for 2005 "indicate that some religious violence continues" and "that there is ongoing harassment and discrimination against ethnic Chinese in Indonesia."[3] Accordingly, the claim that the BIA turned a blind eye to certain portions of the country reports without any explanation is simply inaccurate. Balanced against this evidence, however, the BIA noted "that incidents of [religious] violence are sporadic and limited to specific parts of Indonesia" and that the Country Reports do "not support a finding that there is violence perpetrated against [Chinese] individuals." The BIA's ultimate evaluation of the country conditions evidence was reasonable. See Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007) (noting, in rejecting the petitioner's complaint about the IJ's reliance on an unfavorable passage in a Country Report, that "we defer to the factfinder's reasonable choices from conflicting evidence"); see also Budiono, 548 F.3d at 49; Sinurat v. Mukasey, 537 F.3d 59, 62 (1st Cir. 2008).

As we have noted, the petitioners assert only that the BIA's decision was insufficiently reasoned; they do not

_____

[3] The BIA also noted that the petitioners' "own evidence identifies generalized violence [and] harassment of Christians."

specifically argue that substantial evidence failed to support the BIA's denial of their asylum claim. The abuse alleged by each petitioner, although unfortunate and unpleasant, was not frequent enough to compel a finding of past persecution. Subroto was physically assaulted on one occasion. See Journal v. Keisler, 507 F.3d 9, 12 (1st Cir. 2007) (affirming BIA's ruling that the alien did not suffer past persecution where he "alleged only one incident of violence in which he was struck on the head and arms"). And although Tasya suffered discrimination and harassment on a few occasions, one of which caused her to fall off a motorcycle and seriously injure herself, the incidents she describes were separated by many years. Touch v. Holder, No. 08-1217, 2009 U.S. App. LEXIS 12297, at *9-10 (1st Cir. June 4, 2009) ("An important factor in determining whether [mistreatment amounts to persecution] is whether the mistreatment can be said to be systematic rather than reflective of a series of isolated incidents." (internal quotation omitted)). Finally, Tasya's family continues to live tranquilly in Indonesia. Rashad v. Mukasey, 554 F.3d 1, 6 (1st Cir. 2009); Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) (finding that "the fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return"). Given the lack of past persecution, the continued uneventful presence in Indonesia of close family members, and the country conditions evidence, the BIA

was not compelled to find that the petitioners' claimed fear of future persecution was well-founded.

### III.  Conclusion

For the reasons discussed above, the petition is **denied.**