**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 12-1705

MUHAMMAD HANIF,

Petitioner,

v.

ERIC H. HOLDER, JR.,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Thompson and Kayatta, <u>Circuit Judges</u>.

<u>Syed Zaid Hassan</u> on brief for petitioner.
<u>Kevin J. Conway</u>, Trial Attorney, U.S. Department of Justice,
Civil Division, <u>Stuart F. Delery</u>, Principal Deputy Assistant
Attorney General, and <u>Richard M. Evans</u>, Assistant Director, on
brief for respondent.

July 22, 2013

**KAYATTA, Circuit Judge**.  In his 2008 application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT), Muhammad Hanif claimed that he had left Pakistan due to political persecution he had suffered at the hands of police as a result of his membership in an out-of-power political party, Jamaat-e-Islami ("JI").  In the hearing that followed, he told a different story, portraying the police as having aided JI's recruiting efforts and as having failed to assist him when he was beaten by JI members.  And a few years earlier, at a hearing before the Canadian Immigration and Refugee Board, Hanif testified that he left because he was actually beaten by the police themselves.

In light of the variation between Hanif's three accounts, the Immigration Judge (IJ) who reviewed the 2008 application did not credit Hanif's testimony.  As a result, after holding that the asylum application was time-barred, she rejected his claims for withholding and CAT relief.  The BIA affirmed, and Hanif now seeks review, challenging only the withholding of removal ruling and doing so only on the ground that the IJ's adverse credibility determination was improper.  For the reasons set forth below, we deny his petition.

I

Muhammad Hanif, a native and citizen of Pakistan, left Pakistan for the United Kingdom in 1998.  He soon traveled to

-2-

Canada, where he unsuccessfully sought refugee status. In the year 2000, he entered the United States without inspection. On November 15, 2006, the Department of Homeland Security served Hanif with a Notice to Appear, charging that he was removable as an alien present in the United States without admission or parole, see 8 U.S.C. § 1182(a)(6)(A)(i), as an alien not in possession of a valid visa or entry document, see id. § 1182(a)(7)(A)(i)(I), and as an alien who had sought to procure a visa through fraud, see id. § 1182(a)(6)(C)(i).

Hanif conceded removability on the first two grounds, but in an attempt to avoid removal, on January 18, 2008, he filed an application for asylum, withholding of removal, and CAT relief. See 8 U.S.C. § 1158 (asylum); id. § 1231(b)(3)(A) (withholding); 8 C.F.R. § 1208.16 (CAT). In his application, he wrote that he had left Pakistan due to political persecution that he suffered as a treasurer of JI, an out-of-power political party. Specifically, he claimed, on February 14, 1998, the police attacked the party's office and injured several members. He fled and went into hiding before eventually leaving the country, though police continued to search for him. When his cousin assumed the position of treasurer, the cousin was arrested and tortured. Hanif claimed that, due to his affiliation with JI, he feared being arrested and tortured if he returned to Pakistan.

That was the story Hanif told in his application. But in his appearance before the IJ on December 14, 2009, Hanif explained his basis for relief differently. In this version, the police assumed the role of JI enforcers, rather than JI antagonists. Hanif testified that he feared persecution from the police not on account of his JI membership, but instead because he voiced objections to JI efforts at jihad. He claimed that he became involved with the party solely due to its provision of social services to Pakistan's poor, and that when he learned a separate branch of the party was involved with sending local youths to join "mujahideen" in "jihad" against non-Muslims, he became disillusioned. At a party meeting on February 14, 1998, Hanif claimed, he spoke against jihad and was beaten by other members of the party. He complained to the police and named those who had beaten him, but when police brought the attackers in for questioning and the attackers claimed that Hanif was "becoming a non-Muslim," the police released the attackers and detained Hanif overnight without providing food.

Hanif further testified that the police released him the following day, but only after he agreed to support JI. During the time he was imprisoned, JI's offices had been damaged in protests related to oil development, but had not been attacked by the police. Following his release, Hanif went into hiding. Party members contacted his family members and attempted to contact him

-4-

as well in an attempt to convince him to rejoin the party and promote jihad. They also filed an investigatory complaint against him with the police in order to pressure him into rejoining, and the police began surveilling him. Eventually, Hanif left the country, but his cousin, the new JI treasurer, has since been arrested as part of a crackdown on anti-government protests. Hanif claimed that he feared that "they"--an ill-defined group of "jihadi organizations"--would have him arrested and killed if he returned to Pakistan.

On July 15, 2010, after considering Hanif's application and testimony, the IJ denied each of the three forms of relief Hanif requested. First, she concluded that his asylum application was untimely, because it was not filed within one year of entering the United States, see 8 U.S.C. § 1201(a)(42)(A), as an asylum application must be unless an applicant can demonstrate changed or extraordinary circumstances, id. Hanif filed his application more than seven years after entering the United States, and--despite Hanif's arguments to the contrary--the IJ concluded that the arrest of his cousin did not constitute a changed circumstance. Hanif does not challenge this ruling in his petition for review.

Second, the IJ denied Hanif's request for withholding of removal. Withholding is available when an applicant demonstrates that in the proposed country of removal, it is more likely than not that his or her "life or freedom would be threatened" on account of

-5-

one of the statutorily protected asylum grounds.  8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b).  An applicant has the burden of establishing the credibility of his or her application. 8 C.F.R. § 1208.16(b).

Hanif's testimony and application were, as we have seen, "extremely inconsistent," and the IJ concluded that Hanif was not a credible witness.  Indeed, in addition to the two conflicting grounds--persecution for his commitment to JI and persecution for his opposition to JI--on which Hanif had sought relief in this action, the IJ noted that Hanif had presented a third account when seeking refugee status in Canada.  In this third version, presented to the Canadian Immigration and Refugee Board, the police actually beat Hanif themselves.

The IJ noted that "[o]ther than his presence in Pakistan and membership in the Jamaat-e-Islami party, [Hanif's] claims have been different in each instance."  Hanif blamed the inconsistency on translation errors, but the IJ rejected that explanation on the twin grounds that Hanif had received the help of professional translators and that he had gone into great detail in each of his conflicting accounts.  Ultimately, she found that "the Respondent has provided thoroughly inconsistent versions of past events, and those differences are further magnified by implausible testimony and documentary submissions."  Because the burden rested on Hanif

to demonstrate that he had suffered past persecution, the IJ denied relief.

Finally, the IJ denied Hanif's request for CAT protection, which requires an applicant to demonstrate that it is "more likely than not that he or she would be tortured" by or with the acquiescence of the government in the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). The IJ concluded that, even if she accepted Hanif's claim that he would be arrested if he returned to Pakistan, he had not demonstrated that he "would be targeted for torture or death."

Hanif did not seek BIA review of the IJ's denial of his request for CAT relief, but he did seek review of the IJ's denials of asylum and withholding of removal. The BIA affirmed the IJ's rejection of Hanif's asylum application--a determination that Hanif does not now challenge--and went on to affirm the rejection of Hanif's withholding application, as well. In so doing, the BIA noted that "the Immigration Judge's adverse credibility determination is predicated upon inconsistencies between the respondent's testimony, written application, and testimony before the Canadian Refugee Board which are present in the record and which provide specific, cogent reasons upon which to base an adverse credibility determination."

Hanif now seeks review of the BIA's order affirming the IJ's denial of his application for withholding. In particular, he argues that he adequately explained the inconsistencies regarding his I-589--the form on which he applied for withholding--by stating that "someone else filled out the relevant forms for him, albeit [he] reviewed it." He also notes, without citation, that "[a]ny other inconsistency regarding the incidents with the political group was clarified during his testimony."

III

To state the standard of review is to decide this case. After all, "[w]e accept an IJ's findings of fact, including credibility determinations, as long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Pan v. Gonzales, 489 F.3d 80, 85 (1st Cir. 2007) (quotation omitted); see also 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). We reverse only in cases in which the evidence "points unerringly in the opposite direction." Pan, 489 F.3d at 85 (quoting Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004)).

When the BIA adopts an IJ's decision and also discusses some of the bases of that decision, we review both decisions. E.g., Zheng v. Gonzales, 475 F.3d 30, 33 (1st Cir. 2007). In this

case, the IJ's thorough opinion provides clear grounds on which we must deny Hanif's petition. The IJ discredited Hanif's testimony on the grounds that it "was extremely inconsistent with the claims in his I-589 and his testimony before the Canadian Refugee Board." She based that finding on the fact that "[o]ther than his presence in Pakistan and membership in the Jamaat-e-Islami party, [Hanif's] claims have been different in each instance." She further found that the inconsistencies were not justified by the fact "that [Hanif] did not speak English well," noting that Hanif "had the benefit of a translator before the Canadian authorities, and his I-589 contained explicit details such that this Court cannot see how a translation error could have been the cause."

Moreover, the IJ noted "numerous other, more minor inconsistencies" that suggested that Hanif was not credible. In particular, Hanif "initially stated that he filled out his asylum application himself, yet when confronted by inconsistencies between the application and his testimony he stated that another person filled out the application out for him." In short, the IJ relied not only on the basic inconsistencies going to the very heart of Hanif's claim, as she was entitled to, see 8 U.S.C. § 1158(b)(1)(B)(iii), but also on significant shortcomings regarding Hanif's explanations of why he could not get his story straight. Hanif sets forth no argument as to why she was not entitled to do so. Rather, he simply says she was wrong.

IV

Seen in the best possible light, therefore, Hanif's argument amounts to a proposal that we adopt a requirement that immigration judges credit inconsistent testimony so long as the witness providing it explains the inconsistency. Bound as we are to defer to the agency's factual determinations, we cannot adopt such a rule.

The single factual finding that Hanif challenges is adequately supported by the administrative record. Accordingly, we <u>deny</u> the petition for review.