# United States Court of Appeals
## For the First Circuit

No. 07-1191

KARIM EL-LABAKI,

Petitioner,

v.

MICHAEL B. MUKASEY[*], ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella and Howard, Circuit Judges,
and Delgado-Colón,[**] District Judge.

José A. Espinosa, on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, and Terri J. Seadron, Assistant Director, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, on brief for respondent.

October 1, 2008

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B. Mukasey is substituted for former Attorney General Alberto R. Gonzáles as respondent.

[**] Of the District of Puerto Rico, sitting by designation.

**DELGADO-COLÓN, District Judge**. Petitioner, Karim El-Labaki ("petitioner" or "El-Lebaki"), is a Lebanese national who entered the United States in Boston, Massachusetts on December 30, 2000. At the time of entry, petitioner had a B2 non-immigrant tourist visa that expired on June 29, 2001.

Given his overstay in the United States, on January 30, 2003, the Department of Homeland Security ("DHS") issued petitioner a Notice of Removal Proceedings pursuant to the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1227(a)(1)(B). Through counsel, petitioner admitted the factual allegations within the Notice to Appear and conceded removability. While so doing, El-Labaki petitioned for asylum, withholding of removal and protection under the Convention Against Torture ("CAT").

On December 8, 2004, an Immigration Judge ("IJ") denied all three of petitioner's claims. In making this determination, the IJ concluded that: (a) the asylum application was untimely, inasmuch as it was filed over a year after entry into the United States; (b) El-Labaki did not meet the requirements for an exception to the one (1) year filing deadline; (c) El-Labaki did not qualify for asylum on the merits; and (d) petitioner did not meet either requirements for withholding of removal or protection under CAT.

Petitioner timely appealed the IJ's decision before the Board of Immigration Appeals ("BIA"). On December 26, 2006, the BIA affirmed the IJ's decision and granted voluntary departure.

On January 25, 2007, El-Labaki sought review by this Court of the BIA's determination. Petitioner now contends that the IJ erred in finding that petitioner: (a) did not meet the asylum eligibility criteria under INA § 208, and for withholding of removal (INA § 241(b)(3)); and (b) failed to demonstrate eligibility for withholding under CAT. 8 C.F.R. §§ 1208.16-1208.18.

A.        **Factual and Procedural Background**

El-Labaki is a fifty-five (55) year old Greek Orthodox Christian male, born in 1951 in Anfeh, Al-koura, Lebanon. In 1982, petitioner married Hala Louka El-Labaki, with whom he has three Lebanese children, ages ten (10), nineteen (19) and twenty-three (23).

On December 30, 2000, El-Labaki entered the United States with a B2 non-immigrant tourist visa that enabled him to stay within the United States territory until June 29, 2001. In support of his asylum application, El-Labaki contends that he used to travel through the border of Lebanon. During said trips, he had numerous encounters with Syrians, and was detained at the checkpoints for some time.

Petitioner testified and asserts that from 1975 to 1977 and while traveling outside Lebanon, Syrians had mistreated and

pulled him over approximately ten (10) times at checkpoints outside Lebanon. During one such occasion, upon demand, El-Labaki produced his national card which identified him as a Christian. El-Labaki alleges that because of this, he was taken to and beaten at a Tripoli police station. However, no medical assistance was ever sought or needed.

Between 1977 and 2000, El-Labaki resided primarily in Saudi Arabia, where he worked for five (5) different companies. During this period, he frequently traveled back and forth to Lebanon so as to visit his family members who had relocated to Lebanon in 1995. The relocation was prompted by the worsening of the economic conditions in Saudi Arabia. Examination of El-Labaki's passport revealed that in a twenty-three (23) year span, he had traveled at least twenty-five (25) separate times between Lebanon and Saudi Arabia. While claiming he was harassed at checkpoints whenever returning to Lebanon, he also asserts that in similar travels, undertaken with his wife between 1982 and 1995, he was only "mildly harassed" at checkpoints. Family members have remained unharmed in their country.

In support of his claims, El-Labaki provided information alluding to a 1978 instance in which he had been harassed. On said occasion, while at a checkpoint manned by Syrians, El-Labaki was ordered to step out of his vehicle and compelled to stand on the roadside for several hours in the heat without any water. In 2000,

while intending to apply for a visa to come to the United States, El-Labaki engaged in a brief trip from his hometown to Lebanon. On said occasion, El-Labaki was not harassed, as his taxi driver handled all checkpoint inquiries. Three (3) weeks later, after concluding employment in Saudi Arabia, El-Labaki traveled back to Lebanon for approximately fifteen (15) days before leaving for the United States. On December 20, 2000, while at home, and two (2) days prior to departing for the United States, El-Labaki asserts he was harassed by Syrians.

Before the IJ, El-Labaki testified that he: (a) came to the United States because he "wanted to live a life of freedom and comfort and democracy because in Lebanon there is no security"; (b) moved to Saudi Arabia to escape "torture" and to work because the Lebanese economy was not stable and he could not find a job with a salary sufficient to support his family; (c) only left Saudi Arabia—after having resided there for twenty-three (23) years—upon receiving notice from his employer of a fifty percent (50%) reduction in salary; and (d) that the reason he never moved his family to another part of Lebanon (such as Beirut) was because of the expenses involved and scarce employment opportunities in other regions within Lebanon.

During these years, El-Labaki never sought medical treatment. To date, his family continues to live in Lebanon without harassment, and since 2000, El-Labaki has not returned to Lebanon.

While in the United States, petitioner has worked helping his cousin at his two (2) businesses in exchange for the cousin's economic support of his family in Lebanon.

The IJ examined petitioner's claim, and, although finding his testimony credible, determined that the claim did not rise to the level of persecution. While recognizing that petitioner's ability to travel was merely encumbered by the short-duration detentions at the checkpoint and occasional beating, the IJ considered these interferences negligible inasmuch as El-Labaki remained free to travel within Lebanon, Saudi Arabia, Beirut, Jordan and Syria. The IJ also concluded that El-Labaki's entry into the United States was prompted by economic concerns, that he had not gained "safe haven" in the United States, did not attempt to achieve legal status, overstayed his visa and appeared to be working for a relative at two (2) businesses in the United States.

The IJ noted that petitioner never suffered bodily injuries requiring medical care. Another significant factor considered by the IJ was that El-Labaki's family members were practicing Christians, all went to school, and continued to attend and actively participate in religious services while residing in Lebanon without being subjected to harassment. The IJ concluded that the threat of harassment suffered by petitioner was not "country wide." Accordingly, the IJ determined that El-Labaki had not only failed to establish a well founded fear of clear

probability of persecution, were he to return to Lebanon, but had also failed to establish he would be detained and subjected to torture by any authority or by any group with the acquiescence of the Lebanese government. More so, the IJ concluded that El-Labaki had untimely filed his petition for asylum without showing compelling conditions to excuse his failure to file within the applicable one (1) year statutory period.

On December 26, 2006, the BIA dismissed El-Labaki's appeal and affirmed the IJ's decision. In so doing, the BIA determined that petitioner's claim regarding an objective fear of persecution was undermined by his ability to travel in and out of Lebanon and by his family's continued residence in Lebanon.

El-Labaki now contends that he is to be considered a "refugee" under the INA inasmuch as he has suffered persecution, and has a well founded fear of future persecution based upon religion, political opinion and membership in a particular social group. More so, petitioner contends his delay in applying for asylum was due to his inability to adequately articulate his persecution claims in English or retain the services of a translator. Other factors that El-Labaki avers contributed to his delayed asylum application were his fears of being arrested and removed to Lebanon, coupled with the belated discovery of the asylum laws, specifically, provisions dealing with the one (1) year filing deadline. On review, petitioner also asserts that he has

suffered "torture" and is more likely than not to suffer torture if returned to Lebanon. Given the IJ's credibility determination, petitioner further contends he has met the burden of proof under CAT. Lastly, El-Labaki contends that his deportation will cause financial and emotional hardship to his wife and children.

**B.      Standard of Review**

Determinations by the BIA are subject to the deferential substantial evidence standard. <u>Segran</u> v. <u>Mukasey</u>, 511 F.3d 1, 5 (1st Cir. 2007) (citing <u>Pan</u> v. <u>Gonzáles</u>, 489 F.3d 80, 84-85 (1st Cir. 2007)). This standard requires us to uphold the agency's findings of fact, including credibility determinations, as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>INS</u> v. <u>Elías-Zacarías</u>, 502 U.S. 478, 481 (1992); <u>see</u> <u>also</u> <u>Long</u> v. <u>Gonzáles</u>, 422 F.3d 37, 40 (1st Cir. 2005). We reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); <u>see</u> <u>also</u> <u>Chikkeur</u> v. <u>Mukasey</u>, 514 F.3d 1381, 1382-83 (1st Cir. 2008).

**C.      Petitioner's Claims**

1.      <u>Asylum Application</u>

Section 208(a)(2)(B) of the INA restricts the ability to apply for asylum to one (1) "year after the date of the alien's arrival in United States." 8 U.S.C. § 1158(a)(2)(B). Section 208(a)(3) of the INA, however, dictates that "[n]o court shall have

jurisdiction to review any determination of the Attorney General under paragraph (2)." 8 U.S.C. § 1158(a)(3). In order to qualify for asylum, the alien bears the burden of establishing that he is a "refugee" within the meaning of INA. 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13. To meet the burden, the alien must show that, if returned to his home country, he would face persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 1208.16(b)(2); see also Pan, 489 F.3d at 86. To meet this threshold, the petitioner must demonstrate a well founded fear or persecution on account of one of the above mentioned protected grounds. See Jean v. Gonzáles, 461 F.3d 87, 90 (1st Cir. 2006); Makhoul v. Ashcroft, 387 F.3d 75, 80-81 (1st Cir. 2004). This burden may be met by an alien's own testimony, without need for corroboration, if found credible.

Petitioner contends that, as a "refugee," he qualifies for asylum to the extent he is outside his country of nationality, is unable or unwilling to avail himself of the protection of that country and has a well founded fear of persecution based on race, religion, nationality, membership in a particular social group or political opinion. 8 U.S.C. § 1101(a)(42)(A); see also Alibeaj v. Gonzáles, 469 F.3d 188, 191 (1st Cir. 2006).

Additionally, while conceding that the asylum petition was filed beyond the one (1) year time limit established within section 208(a)(2)(B) of the INA, petitioner argues that he did so

-9-

because he was not aware of the filing deadline, was unable to adequately articulate his persecution claim in the English language and feared being arrested and returned to Lebanon. In other words, petitioner asserts there were "extraordinary circumstances," as specified within section 208(a)(2)(D) of the INA, that excused his delay. 8 U.S.C. § 1158(a)(2)(D).

This court has no jurisdiction to review the agency's determination regarding the timeliness of the asylum application or its application of the "extraordinary circumstances" exception, unless the petitioner identifies a legal or constitutional defect in the decision. See 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D)[1]. Inasmuch as petitioner has failed to identify a legal or constitutional defect in the decision, this Court lacks jurisdiction over El-Labaki's asylum application inasmuch as the IJ found petitioner's application to be time barred and the BIA affirmed said determination. 8 U.S.C. § 1158(a)(3); see also Melhem v. Gonzáles, 500 F.3d 78, 81 (1st Cir. 2007); Pan, 489 F.3d at 84; Sharari v. Gonzáles, 407 F.3d 467, 473 (1st Cir. 2005).

---

[1] Section 1252(a)(2)(D) provides:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).

-10-

2.      Withholding of Removal

Petitioner asserts he was entitled to withholding of removal pursuant to 8 U.S.C. § 1101(a)(42). The IJ and BIA disagreed. So do we.

To prevail on a withholding of removal claim, petitioner has the burden of establishing that it is more likely than not that his life or freedom will be threatened on account of one of the five (5) protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. Id.; see also INS v. Stevic, 467 U.S. 407, 413 (1984) (an alien must establish a clear probability of persecution to qualify for withholding of removal); Hana, 503 F.3d at 44; Boukhtouchen v. Gonzáles, 498 F.3d 78, 80 (1st Cir. 2007); Pan, 489 F.3d at 85-86.

El-Labaki contends that if compelled to return to Lebanon his life will be at risk given the fact he is associated with the Greek Orthodox Christians which in turn are deemed to be associated with or supportive of the Lebanese Christian Forces. While El-Labaki points to several incidents of harassment (i.e., being forced to stand in the heat for long period of time without water; being beaten at border checkpoints and once being threatened while at his residence), the IJ and BIA correctly concluded that these incidents did not rise to the level of persecution, a determination that is contingent upon petitioner proving more than harassment, unpleasantness or unfair treatment. See Susanto v. Gonzáles, 439

-11-

F.3d 57, 59-60 (1st Cir. 2006); <u>Nikijuluw</u> v. <u>Gonzáles</u>, 427 F.3d 115, 120 (1st Cir. 2005). Actually, it appears that only one of El-Labaki's detentions and beatings could even qualify as having been perpetrated by someone with knowledge of his religious beliefs. This was the incident at the border where he was forced to show his identification card.  This is not the case with the other incidents of alleged harassment (i.e., the threats posed by Syrians while at his residence, two (2) days prior to departing to the United States).  In sum, El-Labaki's claim fails for two main reasons.

First, as clearly stated in <u>Segran</u>, inasmuch as "proving eligibility for withholding of removal is similar to, but more demanding than, proving eligibility for asylum, an alien who cannot establish eligibility for asylum a fortiori cannot establish eligibility for withholding of removal on the same facts." <u>Segran</u>, 511 F.3d at 7; <u>see</u> <u>also</u> <u>INS</u> v. <u>Cardoza-Fonseca</u>, 480 U.S. 421 (1987); <u>Ipina</u> v. <u>INS</u>, 868 F.2d 511 (1st Cir. 1989).  Second, even assuming that El-Labaki's assertion that as a Greek Orthodox Christian he is considered a sympathizer of the Lebanese Christian Forces, a political party or former militia, are true, El-Labaki has failed to prove that if he returned to Lebanon he would be targeted or exposed to danger by government entities.

Moreover, El-Labaki's family has continued to reside in Lebanon where they are active and practicing Christians. Still they have never been threatened, harassed, persecuted or caused harm.

-12-

El-Labaki, while in Lebanon, traveled at least twenty-five (25) times between Lebanon and Saudi-Arabia without ever experiencing prolonged periods of detention, incarceration or physical harm warranting medical treatment or hospitalization.  The evidence on the record shows that other relatives continue to live in Beirut, such as El-Labaki's uncle who is self-employed.  While it appears that El-Labaki left his county for economic reasons, he has not returned since 2000 and has not established that the conditions he complained of continue to exist to this day or exist on a country wide basis.

Having failed to establish past persecution, El-Labaki is not entitled to a presumption of future persecution.  See Palma-Mazariegos v. Gonzáles, 428 F.3d 30, 35 (1st Cir. 2005).  Likewise, El-Labaki has failed to prove the likelihood of future persecution based on a statutorily protected ground.  See Hayek v. Gonzáles, 445 F.3d 501, 508 (1st Cir. 2006).

3.    Withholding of Removal and Protection under CAT

An applicant for protection under Article III of CAT must prove that it is more likely than not that he or she will be tortured if removed to the country designated for removal.  Such torture must be inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity.  8 C.F.R. §§ 1208.16–1208.18.  To be entitled to protection under CAT, the applicant for protection

-13-

need not show a nexus to a protected ground. However, in assessing whether it is "more likely than not" that the alien would be tortured, the IJ should consider, among other things: evidence of past torture inflicted on the alien, evidence that the applicant could relocate to another part of the country of removal where most likely he or she will not be tortured and evidence of gross, and flagrant or mass violations of human rights within the country of removal. Id. at § 1208.16(c)(3). An applicant can establish his or her burden of proof by testimony, without corroboration, if the testimony is credible. Id. at § 1208.16(c)(2); see also Dhima v. Gonzáles, 416 F.3d 92, 95 (1st Cir. 2005). Moreover, an alien's failure to mention facts central to his or her claim prior to the hearing does not require a finding of untruthfulness, or a lack of credibility. See Tai v. Gonzáles, 423 F.3d 1, 5 (1st Cir. 2005).

We review the BIA's decision to deny relief under CAT under the "deferential substantial evidence" standard. Jean, 461 F.3d at 90. As such, we accept the BIA's conclusions "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

In the case at hand, the IJ, and subsequently the BIA, considered the inconsistencies within El-Labaki's statements and testimonies when he was interviewed by the asylum officer, those within his asylum application, and the testimony presented at the hearing. In so doing, it was noted that El-Labaki submitted

generalized information regarding political conditions in Lebanon, of which he had no personal knowledge, and mentioned conditions or events that transpired after his departure to United States in 2000. Also, El-Labaki alluded to hours of detentions at the border, harassment, occasional beatings and mistreatment by Syrian authorities, but presented no evidence regarding need for medical treatment, much- less evidence of resulting physical injuries. While claiming he was detained and mistreated over ten (10) times in a two (2) year period, this did not prevent him from traveling over twenty-five (25) times between Lebanon and Saudi Arabia and other places. It remains that no members of his family, either immediate or extended, have suffered any harm from Syrians while residing in Lebanon prior to or after 1995.

More so, before the IJ, El-Labaki claimed his motive for coming to the United States was that "he wanted to live a life of freedom and comfort and democracy because in Lebanon there is no security." However, it remains a fact that while asserting he had moved to Saudi Arabia to escape "torture," he also stressed having done so because the Lebanese economy was not very good and he could not find a job in Lebanon that would pay him enough to support his family or what he used to earn. El-Labaki further stated that he only left Saudi-Arabia, after twenty-three (23) years, because his employer had given him notice of a fifty percent (50%) salary reduction. Thus, petitioner has solely alluded to economic factors.

When specifically questioned why he had not moved his family to another part of Lebanon, such as Beirut, El-Labaki explained that he had not considered such alternatives because relocation was expensive and there were few jobs available in other parts of the country. Thus, as correctly concluded by the IJ, El-Labaki's relocation to Lebanon, and subsequent entry into the United States, were prompted more by economic reasons than by political reasons or by fear of persecution. See Simo v. Gonzáles, 445 F.3d 7, 11-12 (1st Cir. 2006)(noting that alien's airport interview did not suggest that the alien came to the United States to avoid persecution). Having suffered no past persecution, based on substantial evidence on record, the IJ and BIA correctly concluded that El-Labaki has failed to show that he was likely to face persecution or torture upon return to his home country. See Hana, 503 F.3d at 44.

For the foregoing reasons, the petition for review is denied.