# United States Court of Appeals
## For the First Circuit

No. 09-2034

ANSUMANA MAKALO,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Michael A. Paris and Cutler & Associates were on brief for petitioner.
Carmel A. Morgan, Trial Attorney, Office of Immigration Litigation, Tony West, Assistant Attorney General, Civil Division, and Russell J. E. Verby, Senior Litigation Counsel, were on brief for respondent.

July 19, 2010

**LYNCH**, **Chief Judge**.  Ansumana Makalo, a native and citizen of The Gambia (Gambia), petitions for review of a decision by the Board of Immigration Appeals (BIA) affirming an immigration judge's (IJ) denial of his application for withholding of removal and protection under the Convention Against Torture (CAT).  Makalo argues the IJ erred by discrediting several documents he submitted and by finding he had not met his burden to show eligibility for withholding of removal or CAT protection.  Substantial evidence supports the denial of relief.

## I.

Makalo entered the United States on a student visa on January 7, 1992.  On November 21, 2002, he filed an application for asylum, withholding of removal, and protection under the CAT.  Makalo claimed that Gambia issued an arrest warrant for him in 2001 for giving money to his fugitive brother, who had fled political persecution in Gambia.  Makalo alleged he would suffer mistreatment as a prisoner if returned to Gambia.  He did not claim he was the victim of past persecution.

The Department of Homeland Security issued Makalo a Notice to Appear on May 24, 2005, charging him with removability, which Makalo conceded.  Makalo testified before the IJ on July 12, 2007.  In his asylum application and before the IJ, Makalo also submitted State Department and Amnesty International country reports; newspaper articles; Gambia passports issued to Makalo,

-2-

including one issued in August 2001 and one in 1991; a "wanted" notice from July 2001 for Makalo; and a bench warrant for Makalo dated September 2001, alleging Makalo had failed to appear before a tribunal in August 2001.

Makalo's basic story, from his testimony and documents, was as follows. Makalo's brother, Foday Makalo,[1] was Secretary General for the ruling party in Gambia, the Alliance for Patriotic Reorganization and Construction (APRC). In 1999, Foday was charged with abusing his position; the government later alleged that Foday had embezzled party money. Foday fled Gambia, eventually moving to Mali. Makalo testified that Foday's prosecution was politically motivated and that Foday fled after several political associates were killed or disappeared.

Makalo testified that in mid-July 2001 he sent Foday money to visit their father, who had fallen ill, in Gambia. Foday did so without being captured. In 2001 the government allegedly charged Makalo with aiding and abetting a fugitive. Makalo speculated the government learned he had helped Foday by wiretapping their mother's phone. This charge prompted Makalo to seek asylum.

Makalo testified that his childhood friend, Kemo Balajo, sent him all his documentary evidence. He testified that the

---

[1] We refer to Ansumana Makalo as "Makalo" and Foday Makalo as "Foday."

government later arrested and ultimately killed Kemo on unrelated charges.  When pressed on how he obtained a Gambian passport dated August 20, 2001, Makalo testified that his family obtained it for him before the government had learned he had sent money to Foday.

The IJ denied Makalo's application, finding his asylum application was untimely and holding Makalo had not met his burden of proof to obtain withholding of removal or protection under the CAT.  The IJ noted that Makalo's narrative about when he sent his brother money was inconsistent.  Makalo testified he sent the money in mid-July 2001 and obtained a passport in August 2001, before authorities learned what he had done.  Yet, the IJ observed, the "wanted" notice was dated July 2, 2001.  Makalo tried to change his testimony when confronted with this inconsistency.  The IJ concluded, "He ought to remember that date."

The IJ found other problems with Makalo's testimony. Makalo could not remember the date of his father's death.  Makalo could not logically explain how Gambian authorities learned he sent money, while in the United States, to his brother in Mali.  The IJ noted Makalo's explanation-that his mother's phone was wiretapped-- was contradicted by newspaper articles Makalo provided saying that authorities were surprised by Foday's visit to Gambia.

The IJ found much of Makalo's documentary evidence was unreliable.  The IJ noted that a 1997 State Department report said that Gambian asylum applicants had forged documents to improve

their applications. And the IJ noted that Makalo failed to provide accessible evidence to buttress his claims, such as affidavits from his mother, Foday, and another brother--all of whom Makalo was in contact with--verifying his story.

Though the IJ apparently accepted that prisoners in Gambia may face torture, the IJ concluded that Makalo had "failed to meet his burden in these proceedings . . . [to show] through credible testimony or other credible documentation that he has ever been targeted or harmed by the Government . . . or that there is any objective reason why [the Gambian government] might seek to harm him." The IJ also found Makalo had not shown he would face persecution on a protected ground. The IJ found no evidence Foday and Makalo were wanted for political rather than criminal reasons.

The BIA affirmed the IJ's denial of Makalo's application for withholding of removal and CAT protection. The BIA rejected his argument that the IJ should have credited his documents, finding that Makalo ignored many "indicia of unreliability" the IJ supportably relied on. The BIA affirmed the IJ's ruling that Makalo had not presented reliable evidence he would face persecution or torture in Gambia or that he would be persecuted on a protected ground.

II.

Our review is under the "highly deferential" substantial evidence standard. Mejilla-Romero v. Holder, 600 F.3d 63, 70 (1st

Cir. 2010) (internal quotation marks omitted). We must accept any findings that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and we will not disturb the agency's decision unless "any reasonable adjudicator would be compelled" to reach a contrary conclusion. Id. (internal quotation marks omitted).

To obtain withholding of removal,[2] applicants must prove it is more likely than not that they will suffer persecution on one of five protected grounds, "race, religion, nationality, membership in a particular social group, or political opinion." Faye v. Holder, 580 F.3d 37, 41 (1st Cir. 2009) (internal quotation marks omitted). Applicants seeking CAT protection must prove "it is more likely than not they will be tortured if removed to their destination country." Id. at 42.

Makalo argues the IJ should not have discounted his documentary evidence. He also argues the IJ and BIA should have found he had established eligibility for withholding of removal and CAT protection. Both arguments fail.

Makalo urges the IJ improperly rejected his documentary evidence because he submitted copies rather than originals. Makalo overlooks the IJ's real concern: the IJ had great reason to doubt

_____

[2] Makalo waived any appeal of the IJ's denial of his asylum application by not appealing that decision to the BIA. See, e.g., Jia Duan Dong v. Holder, 587 F.3d 8, 13 (1st Cir. 2009).

the authenticity of the copies he submitted. Without originals, the IJ simply could not rely on these documents.

Makalo submitted two documents showing he was wanted; both were problematic. The date of a wanted notice contradicted Makalo's testimony. Part of the notice was handwritten, and it incorrectly stated Makalo's age. The bench warrant also had handwriting and said that Makalo was due to appear in court just eleven days after he obtained a passport in Gambia.

Of the many newspaper articles Makalo submitted, only two mentioned him. Both appeared designed to buttress his application. One was also in a different font than the rest of the newspaper and was dated days after Kemo, whom Makalo testified sent the article, was imprisoned for nine months.[3] The IJ supportably chose to give these articles no weight.

Substantial evidence supported the IJ's and BIA's rulings that Makalo had not presented enough credible evidence that he would be harmed in Gambia to obtain withholding of removal or CAT protection. Makalo's story was inconsistent and his evidence weak.

---

[3] This article was also substantively suspicious. It identified Makalo as a suspect in a large coup plot, and it featured his picture prominently on the front page. The State Department's 2006 country report confirmed Gambian authorities arrested nearly fifty people for plotting to overthrow the government. Although the report mentioned many suspects, it did not mention Makalo. Even Makalo, in his testimony, never mentioned coup allegations.

Makalo's testimony and other evidence contradicted the core of his application: his claim that Gambia would persecute him for sending his fugitive brother money. The date on the wanted notice contradicted Makalo's story that he sent his brother money in mid-July 2001 and that authorities had not learned of his actions when he obtained a passport in August 2001. Moreover, the passport was dated just eleven days before the bench warrant Makalo submitted said Makalo was required to appear in court on criminal charges. Makalo was never able to give a narrative that matched the documents he submitted.

Makalo's story had other inconsistencies. Makalo could not credibly explain how authorities learned he had sent Foday money or how he had obtained documents from the imprisoned Kemo. Makalo could not credibly explain why he testified that Kemo had been killed when the State Department had reported that Kemo had been released. He could not even remember when his father died or when he last spoke to his brother and mother.

As we explained above, the IJ had good reason to doubt much of Makalo's supporting evidence. And Makalo failed to provide other, useful evidence. He did not submit birth certificates or affidavits from family members verifying his story. He had no evidence of when or how he received his documents (and indeed contradicted himself about how those documents were sent).

Substantial evidence also supported the IJ's and BIA's conclusions that Makalo did not prove he would suffer persecution based on a protected ground. Foday was charged with embezzlement, and Makalo admittedly gave Foday, a fugitive, money to secretly enter Gambia. Makalo provided no evidence other than his own testimony that Makalo and Foday were wanted for political rather than criminal reasons.

Makalo simply did not present significant credible evidence that he was wanted by Gambian authorities or that he was wanted for political reasons. We cannot say the record compels us to reach a different conclusion than the IJ or the BIA.[4]

The petition for review is <u>denied</u>.

---

[4] Although we deny the petition for review, we note the poor quality of the recording of the IJ's decision as reflected in the transcription, which has made review difficult.