# United States Court of Appeals
## For the First Circuit

No. 09-2707

FARRUKH GHOURI,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Selya and Howard, <u>Circuit Judges</u>.

<u>William P. Joyce</u> was on brief for petitioner.
<u>William C. Minick</u>, Attorney, Office of Immigration Litigation,
<u>Tony West</u>, Assistant Attorney General, Civil Division, and <u>Linda S. Wernery</u>, Assistant Director, were on brief for respondent.

August 30, 2010

**LYNCH**, <u>**Chief Judge**</u>.  Farrukh Ghouri, of Pakistan, petitions for review of a November 30, 2009 decision by the Board of Immigration Appeals (BIA).  The BIA upheld a February 25, 2008 Immigration Judge (IJ) decision denying Ghouri's applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  A Shia Muslim, Ghouri claims that he fears his brother-in-law will murder him and his wife in an honor killing because his wife converted from Sunni to Shia Islam when she married Ghouri.  We are without jurisdiction to review the denial of the untimely claim of asylum.  Substantial evidence supports the determination that Ghouri failed to show eligibility for withholding of removal or CAT protection.  We deny the petition in part and dismiss it in part.

## I.

Ghouri entered the United States on March 14, 2001, on a temporary visitor visa and overstayed.  On March 19, 2003, the Department of Homeland Security issued a Notice to Appear charging him with removability, which Ghouri conceded.  On July 15, 2004, Ghouri filed for asylum, withholding of removal, and protection under the CAT.  His asylum application was outside the one-year statutory deadline. See 8 U.S.C. § 1158(a)(2)(B).

Ghouri's application gave three grounds for the relief he sought: his involvement in the Pakistan People's Party, threats and attacks by his brother-in-law because Ghouri is a Shia Muslim and

-2-

because of his wife's conversion to Shia Islam, and visits by the police to Ghouri's family home for unspecified reasons. In his brief to this court, Ghouri presses only his claims based on his brother-in-law's threats and actions, so we restrict our discussion to this ground.

The IJ found Ghouri's application and hearing testimony generally credible. Ghouri married his wife, Saira, in Lahore, Pakistan in February 1998.[1] He was a Shia Muslim, and Saira converted from Sunni to Shia Islam. Saira's family had intended for her to marry her cousin and was angry that she married a Shia and converted. Her brother, Wajid Ali (Wajid), was particularly furious.

Before the wedding, Wajid threatened to beat and to kill Ghouri if he married Saira. After the wedding, at a family gathering in April, 1998, Wajid again threatened to kill Ghouri, and at another family gathering that September, Wajid threatened to kill Ghouri and Saira.

During the three years between Ghouri and Saira's marriage and Ghouri's departure for the United States, Ghouri and Saira lived only a quarter mile from Wajid, and the two men passed one another on their motorcycles "all the time" without incident.

---

[1]     There is no information in the record about the current status of Ghouri's wife and daughter except that they entered the United States on June 16, 2001, on temporary visitor visas, which they have overstayed.

-3-

Wajid never came to their home. While Ghouri's asylum application stated that Wajid had "punched and hit" him on three occasions at family gatherings, he testified that Wajid actually injured Ghouri only once.

In that incident, Wajid punched Ghouri near his left eye. Ghouri got two stitches in an emergency room. Another time, Wajid threw glass and rocks at Ghouri, and the third time, Ghouri escaped Wajid's attempt to hit him without injury. Each time, family members would restrain Wajid and take him away. Wajid also hit Saira on the head and slapped her face at least once at a public gathering. Ghouri never reported any of these incidents because they were family matters.

Ghouri claimed that he could not move to another part of Pakistan because members of Saira's large and wealthy family lived throughout the country.

Ghouri claimed exceptional circumstances -- his depression -- rendered him incapable of timely applying for asylum, and he submitted letters from his psychiatrist and family doctor supporting this claim. He said that he became depressed shortly after arriving in the United States in 2001, though he did not seek treatment for depression until 2006.

The IJ rejected Ghouri's claim that depression prevented him from timely filing for asylum, finding the psychiatrist's retrospective depression diagnosis speculative, and concluding that

-4-

Ghouri had not established extraordinary circumstances excusing his late asylum application from the one-year time bar. See 8 U.S.C. § 1158(a)(2)(D).

The IJ found Ghouri ineligible for withholding of removal, on the grounds that (1) he had not established past persecution, both because Wajid's death threats were not credible and because the incidents in total did not rise to the level of persecution, (2) he had not established that it was more likely than not that he would suffer future persecution because the evidence did not support a finding that Wajid would actually try to kill him, (3) Ghouri's failure to report any of the incidents to the police prevented him from demonstrating government involvement in the alleged persecution, and (4) Ghouri could relocate within Pakistan to avoid Wajid, who was the only person in Saira's family harassing Ghouri.

The IJ denied Ghouri's claims under the CAT because he had not demonstrated that Wajid would more likely than not harm him in the future or that the Pakistani government or police would condone or acquiesce in such harm.

The BIA affirmed, agreeing with the IJ that the statements from Ghouri's doctors were speculative, and that based on the record Ghouri had not established extraordinary circumstances excusing his asylum application from the one-year time bar. The BIA found no legal error in the IJ's rulings, and no

clear error in the IJ's underlying factual findings.  The BIA specifically affirmed that the incidents involving Wajid did not rise to the level of persecution and that Ghouri had not shown he would more likely than not be persecuted in the future, given that Wajid had lived near him for several years but had not seriously harmed him.  Finally, the BIA found that the record supported the IJ's denial of protection under the CAT.

## II.

Ghouri challenges the IJ and BIA's determinations that his asylum application was untimely and that he was ineligible for withholding of removal or CAT protection because he failed to establish past persecution or a well-founded fear of future persecution.  We reject each of his claims of error.[2]

A.          Lack of Jurisdiction over Asylum Claim

Under 8 U.S.C § 1158(a)(3), this court lacks jurisdiction over an untimely asylum claim unless the applicant shows a legal or constitutional defect in the agency's timeliness decision.  Makieh v. Holder, 572 F.3d 37, 42 (1st Cir. 2009); El-Labaki v. Mukasey, 544 F.3d 1, 5 (1st Cir. 2008).  Ghouri has identified no such defect, so we lack jurisdiction to hear this claim.

The only purported "legal error" Ghouri offers is based on his incorrect assertion that the IJ and BIA wholly ignored his

---

[2]     Ghouri's argument that the IJ and BIA's carefully reasoned decisions are not clear enough to permit review is utterly meritless.

-6-

claimed "exceptional circumstance" that he suffered from a mental disability, depression. Not so. The IJ expressly addressed Ghouri's claimed mental disability. The BIA expressly agreed with the IJ's finding that the physician letters were speculative, and that Ghouri had failed to establish extraordinary circumstances.[3] We cannot review these assessments.

B.        Withholding of Removal and Protection under the CAT

When the BIA "adopts the IJ's opinion and discusses some of the bases for the IJ's decision," we review both the IJ's and BIA's opinions. Makieh, 572 F.3d at 41 (quoting Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009)) (internal quotation marks omitted). We review factual findings under the deferential substantial evidence standard. Id. We reverse only if any reasonable adjudicator would be compelled to reach a contrary conclusion. Id.

We bypass the usual recitations about the legal requirements the petitioner must meet and get to the merits. The conclusion that any harm Ghouri suffered did not rise to the level of persecution is well-supported in the record. Ghouri's brief identifies three ways he suffered persecution at the hands of his

---

[3] Ghouri makes much of the BIA's apparent misstatement that Ghouri first sought medical attention for a heart condition, rather than his depression, in 2006. But this claim of factual discrepancy does not constitute a claim of legal error. See Ayeni v. Holder, No. 09-1508, 2010 WL 3220630, at *4 (1st Cir. Aug. 17, 2010).

-7-

brother-in-law, Wajid: Wajid threatened Ghouri and his family, injured or attempted to injure Ghouri in three incidents, and beat Ghouri's wife. This "persecution" came solely from Wajid. It is clear that Wajid's family restrained Wajid when he acted in their presence. Further, Wajid never attempted to harm Ghouri in his home, he physically confronted Ghouri only rarely and only at large gatherings, and any harm he inflicted was minimal.

Ghouri claimed that Wajid punched him once in the face, threw rocks and glass at him once, and once struck at but did not injure him.[4] As to Saira, the IJ found that Wajid slapped Saira in the face and head at least once, though Ghouri claimed in his asylum application that Wajid hit her on several occasions. He never claimed that she was seriously injured.

This offensive treatment by Ghouri's brother-in-law simply was not pervasive or severe enough to compel the BIA to find that it amounted to persecution, even without comparing these facts to other cases in which we have upheld BIA findings of no persecution. And if a comparison is made, the conclusion becomes even more obvious. See, e.g., Ravix v. Mukasey, 552 F.3d 42, 44-46 (1st Cir. 2009); Limani v. Mukasey, 538 F.3d 25, 31 (1st Cir. 2008); Susanto v. Gonzales, 439 F.3d 57, 59-60 (1st Cir. 2006).

---

[4]   Ghouri vehemently disputes the IJ's conclusion that, though Ghouri mentioned three incidents in his asylum application, his hearing testimony discussed only one incident. The IJ's conclusion was supportable; further, even if there were three encounters, that would not compel a finding of persecution.

Ghouri argues the BIA's finding that he would not face future persecution fails because the BIA erroneously said he had lived close to Wajid without harm for five years, when, as the IJ correctly found, it was for three years.  This discrepancy does not undermine the core reasoning of either the BIA or the IJ and certainly does not compel a different conclusion.

It follows that Ghouri's claims for CAT relief also fail. See Makalo v. Holder, No. 09-2034, 2010 WL 2802642, at *3 (1st Cir. July 19, 2010); Faye v. Holder, 580 F.3d 37, 42 (1st Cir. 2009).

The petition for review is denied as to the withholding of removal and CAT claims, and dismissed as to the asylum claim.